JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LUIS ALEJANDRO MADRIGAL AND LAMBERTO AVITIA PEREZ,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA, ET AL,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. EDCV 15-00261-VAP (DTBx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITHOUT LEAVE TO AMEND (DOC NO. 52)**<br><br>**[Motion filed on August 3, 2015]** |

     Plaintiffs' Third Amended Complaint (("TAC") Doc. No. 41) alleges that San Bernardino County violated Plaintiffs' civil and constitutional rights by improperly obtaining disclaimers of seized property and failing to sufficiently provide notice to Plaintiffs of the forfeiture of the property.  (TAC ¶¶ 47-48.)

# I. BACKGROUND

## A.   Factual Background

In June 2012, a San Bernardino County law enforcement task force seized money and drugs from a house located at 1007 West D Street in Ontario, California.  (TAC ¶ 13.) Plaintiffs Luis Madrigal and Lamberto Perez were in the house where the drugs and money were seized and they disclaimed ownership in writing.  (TAC ¶ 23.)  Alleging that the money was being used in connection to drug transactions, the San Bernardino District Attorney's Office filed civil forfeiture proceedings and a California Superior Court granted the application and ordered that the money be forfeited to the State, in part based on Plaintiffs' signed disclaimers.  (TAC ¶¶ 21-23.)

## B.   Procedural Background

On February 11, 2015, Plaintiffs filed their initial complaint which was repeatedly amended by stipulations to dismiss all defendants except Defendant San Bernardino County and all claims except the <u>Monell</u> liability claim. (Doc. Nos. 30, 40, 46, 47, 49.)  On August 3, 2015, Plaintiffs filed a motion for summary judgment and Defendant filed a motion for judgment on the pleadings. (Doc. Nos. 50 & 52.)

## II. LEGAL STANDARD

The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss.  <u>Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.</u>, 132 F.3d 526, 529 (9th Cir. 1997).  In considering a motion for judgment on the pleadings, a court must accept as true all material allegations in the complaint and must construe those allegations in the light most favorable to the plaintiff. <u>Pillsbury, Madison & Sutro v. Lerner</u>, 31 F.3d 924, 928 (9th Cir. 1994).  A court should grant a motion for judgment on the pleadings only when the moving party is entitled to judgment as a matter of law.  <u>Fajardo v. County of Los Angeles</u>, 179 F.3d 698, 699 (9th Cir. 1999).

## III. DISCUSSION

Plaintiffs' complaint alleges that Defendant County of San Bernardino is liable under section 1983 because it failed to afford Plaintiffs with the "opportunity to contest the forfeiture of the currency" and that its policies and customs were the reason for the violation and injury.  Defendant argues that Plaintiffs' claim fails because the San Bernardino District Attorney was acting as a state official when conducting the forfeiture proceeding.  (Mot. at 6.)

1    To state a claim under section 1983, a plaintiff must
2  allege (1) a violation of a right secured by the
3  Constitution or laws of the United States, and (2) that
4  the alleged violation was committed by a person acting
5  under the color of state law.  <u>West v. Atkins</u>, 487 U.S.
6  42, 48 (1988).  A state actor is not a "person" for
7  purposes of liability under section 1983.  <u>Will v.</u>
8  <u>Michigan Dep't of State Police</u>, 491 U.S. 58, 66 (1989)
9  ("We hold that neither a State nor its officials acting
10 in their official capacities are 'persons' under §
11 1983."); <u>Howlett v. Rose</u>, 496 U.S. 356, 365 (1990)
12 ("Persons" does not include 'the State and arms of the
13 State ... ' which receive sovereign immunity from the
14 Eleventh Amendment.").

15

16 **A.   Was the District Attorney a State Actor?**
17    Defendant argues that Plaintiffs have provided no
18 authority standing for the proposition that a county can
19 be held liable for the conduct of a district attorney,
20 when that district attorney is acting as a state
21 official.  (Reply at 2.)  This is not true.  While there
22 is no bright line rule on this issue, Plaintiffs have
23 cited a number of cases that are instructive.

24

25    In <u>McMillian</u>, the Supreme Court describes the
26 analysis used to determine whether a policymaker acts on
27 behalf of the state or local government.  <u>McMillian v.</u>
28

4

Monroe Cnty., 520 U.S. 781.   The Court was clear that the inquiry is not undertaken in a "categorical, 'all or nothing' manner," but rather that the "cases on the liability of local governments under section 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."   Id. at 785. The "inquiry is dependent on an analysis of state law." Id. at 786.

Here, based on an analysis of relevant California law, the Court concludes that the San Bernardino District Attorney acts as local policymaker when adopting and implementing policies and procedures related to civil forfeiture of personal property.   In Pitts v. Cnty. of Kern, 17 Cal. 4th 340, 363 (1998), the California Supreme Court concluded that a "district attorney represents the state, not the county, when preparing to prosecute and when prosecuting crimes, and when establishing policy and training employees in these areas."   The Pitts court noted that it was "not seeking to make a characterization of [California district attorneys] that will hold true for every type of official activity they engage in," but instead focused on the district attorney's function "when preparing to prosecute and when prosecuting criminal violations of state law."   Id. at 352.

1      The San Bernardino District Attorney's function at

2  issue here is distinguishable from that  confronted in

3  Pitts. Here, Plaintiffs challenge the District Attorney's

4  failure to provide proper notice upon forfeiture of

5  personal property.  (Opp. at 13.)  The conduct at issue

6  involves not prosecutorial strategy, but rather

7  administrative oversight of civil forfeiture proceedings.

8  The decision in Weiner v. San Diego County, 210 F.3d 1025

9  (9th Cir. 2000) is of no avail to Defendant either.   In

10  Weiner, the Ninth Circuit held that a "district attorney

11  act[s] on behalf of the state, not the county, in

12  deciding to prosecute" a person for a crime, but

13  acknowledged that "this is not to say that district

14  attorneys in California are state officers for all

15  purposes.  Id. at 1032. To the contrary, California law

16  suggests that a "district attorney is a county officer

17  for some purposes." Id. at 1031.

18

19      In Goldstein v. City of Long Beach, 715 F.3d 750, 751

20  (9th Cir. 2013), the Ninth Circuit found that California

21  district attorneys act as local policymakers when

22  adopting and implementing internal policies and

23  procedures related to the use of jailhouse informants.

24  Under the court's analysis in Goldstein, other provisions

25  indicating that the San Bernardino District Attorney here

26  acts on behalf of the county include the following:

27

28

1      • District attorney is paid "out of the county
2        treasury," Cal. Gov. Code § 28000, and the board
3        of supervisors "shall prescribe the
4        compensation" of the district attorney, Cal.
5        Gov. Code § 25300.

6      • Necessary expenses incurred "in the prosecution
7        of criminal cases" are "county charges," and the
8        district attorney must "account for all money
9        received by him in his official capacity and pay
10       it over to the treasurer" of the county board of
11       supervisors.  Cal. Gov. Code § 29601.

12     • The district attorney shall render legal
13       services to the county without fee," Cal. Gov.
14       Code § 26520; is the "legal adviser" for the
15       county if there is no county counsel, Cal. Gov.
16       Code § 26526; cannot "in any way advocate"
17       against the county, Cal. Gov. Code § 26527; and
18       may defend the county against the State of
19       California in a state eminent domain proceeding,
20       Cal. Gov. Code § 26541.

21
22
23
24
25
26
27
28

1    • Counties are required to defend and indemnify
2       the district attorney in an action for damages.
3       Cal. Gov. Code §§ 815.2, 825.  The county's
4       obligation to defend and indemnify the district
5       attorney in an action for damages is a "crucial
6       factor [that] weighs heavily[.]" <u>Streit v. Cnty.</u>
7       <u>of Los Angeles</u>, 236 F.3d 552, 562 (9th Cir.
8       2001).

9

10   Read as a whole, these authorities reveal that
11   although a district attorney acts on behalf of the state
12   when conducting prosecutions that is not the case where
13   he or she is carrying out administrative policies such as
14   those here.  Accordingly, the Court finds that the San
15   Bernardino District Attorney was acting as a local
16   government official when conducting the forfeiture
17   proceeding.

18

19   **B.   Municipality Liability**
20   Section 1983 applies to the actions of "persons"
21   acting under color of state law.  <u>West</u>, 487 U.S. at 48.
22   A local governmental unit or municipality can be sued as
23   a "person" under section 1983.  Here, the San Bernardino
24   County District Attorney is a "sub-unit" of the County of
25   San Bernardino, which is the proper defendant because
26
27
28

8

that is the governmental entity considered to be "person" under section 1983.[1]  See Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978).

In Monell, the Supreme Court held that "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Monell, 436 U.S. at 694.  A section 1983 plaintiff may establish municipal liability in one of three ways.  First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy.  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

---

[1] Municipal departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983.  Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995).

1    Here, Defendant argues that Plaintiffs have failed to
2  plead a sufficient factual basis for <u>Monell</u> liability
3  because their claims are all conclusory, have not
4  identified specific unconstitutional practices or
5  policies, and have not identified an incident, other than
6  the current one, as a source of liability.  (Mot. at 8.)
7  Plaintiffs argue their complaint factually alleged a
8  clear constitutional violation - Defendant's failure to
9  serve Plaintiffs with notice of the civil forfeiture
10 proceedings.  (Opp. at 14; TAC ¶¶47-48.)

12    To survive a motion to dismiss or judgment on the
13 pleadings, Plaintiffs must allege "enough facts to state
14 a claim to relief that is plausible on its face" and
15 "asks for more than a sheer possibility that a defendant
16 has acted unlawfully." <u>Bell Atl. Corp. v. Twombly</u>, 550
17 U.S. 544, 570; <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677
18 (2009).  Plaintiffs allege only this incident in support
19 of their claim; however, <u>Monell</u> liability may not be
20 based on a single incident of unconstitutional action by
21 a non-policymaking employee.  <u>Davis v. City of</u>
22 <u>Ellensberg</u>, 869 F.2d 1230, 1233 (9th Cir. 1989).

24    Plaintiffs' complaint does not allege more than mere
25 legal conclusions and a formulaic recitation of the
26 elements.  The Fourth Cause of Action in the Third
27 Amended Complaint alleges that the County of San

1  Bernardino engaged in an unconstitutional act without

2  identifying a formal governmental policy, longstanding

3  practice, or custom as Monell requires.  (TAC ¶¶ 47-48.)

4  Moreover, Plaintiffs do not allege that a "final policy-

5  making authority" committed or ratified the

6  unconstitutional act as a part of an official government

7  policy.  Hence, Plaintiffs have failed to state a claim

8  for Monell liability under the pleading standards of

9  Twombly and Iqbal.

10

11 **C.   Leave to Amend**

12      Federal Rule of Civil Procedure 15(a) provides that a

13 Court "should freely give leave [to amend] when justice

14 so requires."  Fed. R. Civ. P. 15(a)(2).  Although

15 liberally granted, leave to amend is not automatic.

16 Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.

17 1990).  The Ninth Circuit considers a motion for leave to

18 amend under five factors: bad faith, undue delay,

19 prejudice to the opposing party, futility of amendment,

20 and whether plaintiff has already amended the complaint.

21 In re W. States Wholesale Natural Gas Antitrust Litig.,

22 715 F.3d 716, 738 (9th Cir. 2013) (quoting Allen v. City

23 of Beverly Hills, 911 F.2d 367, 373 (9th Cir.1990)).

24

25      Plaintiffs do not seek leave to amend in bad faith;

26 nevertheless, allowing leave to amend would cause undue

27 delay.  This is not a complex case, yet Plaintiffs have

28

added claims and dismissed defendants by amending their
complaint through stipulation three times already.  (See
Doc. Nos. 30, 40, 46.)  The deadline to amend the
pleadings was June 29, 2015.  (Doc. No. 32.)  At the
motion hearing, Plaintiffs' counsel said he needed to do
more research in order to state a Monell claim against
Defendant, but failed to describe any additional facts
that could support such a claim.  Moreover, the complaint
was filed on February 11, 2015, over six months ago, has
been amended three times, and no explanation offered as
to why such research has not already been undertaken.

Allowing Plaintiffs to amend the complaint would be
futile.  First, Plaintiffs have not been able to state a
claim having three chances to do so.  Second, Plaintiffs'
motion for summary judgment as to their single Monell
claim fails to identify specific unconstitutional
practices or policies as required by Monell.  See supra
Part III.B.  When questioned about the lack of facts
giving rise to Monell liability at the motion hearing,
Plaintiffs were not able to articulate an incident, other
than the current one, as a source of liability.  Giving
Plaintiffs more time to research alternative sources of
liability would be futile since Monell is the only way to
bring a constitutional claim against a municipality.
Monell, 436 U.S. at 694.

12

1    Finally, while Defendant has not shown prejudice, the
2  strong showing of the other factors warrants granting the
3  motion for judgment on the pleadings without leave to
4  amend.  <u>See</u> <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316
5  F.3d 1048, 1052 (9th Cir. 2003).
6
7                      **IV. CONCLUSION**
8    For the foregoing reasons, the Court GRANTS
9  Defendant's motion for judgment on the pleadings without
10 leave to amend and renders Plaintiffs' motion for summary
11 judgment MOOT.
12
13 Dated: <u>September 3, 2015</u>     _____
14                                 VIRGINIA A. PHILLIPS
                                   United States District Judge
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                              13